THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **Universal Protection Service, LLC d/b/a Allied Universal Security Services**<br><br>　　　　　　　Plaintiff,<br>v.<br><br>**Archangel Protective Services Inc.**<br><br>　　　　　　　Defendant. | Case No. _____<br><br>JURY DEMAND |

## VERIFIED COMPLAINT

Plaintiff, Universal Protection Service, LLC d/b/a Allied Universal Security Services ("Allied"), by and through its undersigned attorneys, Royer Cooper Cohen Braunfeld LLC, files this Civil Action Complaint ("Complaint") against Defendant, Archangel Protective Services Inc. ("Archangel"), and avers as follows:

### I. Introduction

1. This is a straightforward breach of contract claim between Allied (as a successor-in-interest to an entity called G4S Secure Solutions (USA) Inc. ("G4S")) and Archangel, arising from Archangel's "inappropriate client contact" and violation of its non-solicitation obligations in a subcontractor agreement with Allied.

2. Specifically, Archangel's recent submission of a bid to serve as The Metropolitan Government of Nashville and Davidson County's ("Metro") Prime Contractor for Security Officer Services, in response to Metro's Request for Quotation 373412 ("RFQ 373412"), constitutes a breach of the "inappropriate client contact" and non-solicitation provisions set forth in the Subcontractor Agreement entered between G4S and Archangel, effective as of May 30, 2013 ("Subcontractor Agreement"), and amended on January 9, 2019 ("Amendment to Subcontractor

1

Agreement"). True and correct copies of the Subcontractor Agreement and Amendment to Subcontractor Agreement are attached hereto as **Exhibit "A."**

3. As successor-in-interest to G4S, Allied seeks the benefit now owed to it under the Subcontractor Agreement and Amendment to Subcontractor Agreement, and it respectfully requests that this Court enter an injunction prohibiting Archangel from further violating its contractual obligations and, specifically, prohibiting Archangel from performing work on projects for which it was hired as a result of its conduct in violation of the "inappropriate client contact" and non-solicitation provisions. Allied also demands that Archangel be prohibited from accepting any prime award from Metro, and be required to withdraw its bid to Metro. Allied also seeks its attorneys' fees and costs incurred in connection with this action.

## II. Parties

4. Allied provides private security services, and is headquartered at Eight Tower Bridge, 161 Washington St. Suite 600 Conshohocken, PA 19428. Allied is a Delaware limited liability company, with a principal place of business in Pennsylvania.

5. Archangel provides private security services and is headquartered at 444 Metroplex Dr. B-201 Nashville, TN, 37211. Archangel is a Tennessee corporation, with a principal place of business in Tennessee.

## III. Jurisdiction

6. This Court has subject matter jurisdiction over this Action pursuant to 28 U.S.C. § 1332(a) because: (i) Allied is a citizen of Delaware and Pennsylvania, and Archangel is a citizen of Tennessee, such that Allied and Archangel are completely diverse from one another; and (ii) in light of Archangel's conduct as set forth in this Complaint below, Allied seeks in excess of $75,000 in damages, exclusive of interests and costs, in an amount to be fully determined at trial.

7. This Court has personal jurisdiction over Archangel because, *inter alia*: Archangel is a Tennessee corporation; Archangel maintains a principal place of business in Tennessee; Archangel entered the contract at issue with G4S, Allied's predecessor-in-interest, in Tennessee; Archangel performed its obligations and collected its benefits under that contract in Tennessee; and Archangel regularly conducts business in Tennessee.

8. Venue is appropriate in this Court because Archangel maintains a principal place of business in the Middle District of Tennessee; and the events giving rise to this claim occurred in the Middle District of Tennessee.

## IV. Factual Background

### A. The Agreements at Issue

9. G4S, Allied's predecessor-in-interest, is a private security provider, which provides security services, including security personnel, to its clients.

10. In May 2013, G4S entered Contract Purchase Agreement 443320 with Metro, pursuant to which G4S agreed to serve as Prime Contractor for security officer services for all Metro departments for a five-year term ("Original CPA 443320"). A true and correct copy of Original CPA 443320 is attached hereto as **Exhibit "B."**

11. G4S subsequently entered into a Subcontractor Agreement with Archangel, effective as of May 30, 2013, pursuant to which Archangel agreed to serve as subcontractor in connection with Original CPA 443320, furnishing G4S with security personnel or other agreed upon services for the duration of Original CPA 443320. *See* Subcontractor Agreement, Ex. A.

12. Section 3 of the Subcontractor Agreement states that "[t]he work under this Agreement shall commence immediately upon the signing of this Agreement or a reasonable time

3

thereafter and continue until the [Metro] Contract terminates, or this Agreement is terminated by G4S or [Archangel] in accordance with this paragraph, whichever occurs first." Ex. A at p. 2.

13. Importantly, the Subcontractor Agreement contains the following Liquidated Damages provision, which includes an "inappropriate client contact" provision and a non-solicit provision:

> **11. LIQUIDATED DAMAGES:** The parties agree that G4S **would sustain damages if [Archangel] contacted [Metro] directly during the term of this Agreement or following the termination thereof**, disparaged G4S to [Metro], involved [Metro] in disputes related to [Original CPA 443320] or [Archangel's] performance thereunder, or otherwise attempted to involved [Metro] in matters related to this Agreement ("Inappropriate Client Contact"). The parties further agree that it would be difficult or impossible to determine, including but not limited to increased exposure to litigation, adverse publicity and detrimental impact on revenue. Accordingly, the parties agree that [Archangel] shall pay to G4S, as liquidated damages and not as a penalty, the following amounts that the parties agree are reasonable in light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss; (i) One Thousand Dollars ($1,000) per Client Contact; (ii) Ten Thousand Dollars ($10,000) if [Archangel] commits more than five (5) Client Contacts within a single calendar month; and (iii) Twenty-Five Thousand Dollars ($25,000) if [Archangel] commits more than ten (10) Client Contacts within a single calendar year. **The parties further agree this provision shall remain in full force and effect for two years following any termination hereof. [Archangel] further agrees not to solicit [Metro] during the term of this Agreement for a period of two (2) years after the termination or expiration of this Agreement.**

*See* Ex. A at p. 7 (emphasis added). These provisions were necessary to protect G4S's relationship with Metro and allow G4S to maintain a reasonable competitive edge as a prime contractor.

14. In addition, Section 12 of the Subcontractor Agreement expressly states, "**[i]n any dispute to enforce the terms of this Agreement, the prevailing party shall be entitled to collect its reasonable attorneys' fees whether or not suit is filed, through trial and at all appellate levels.**" Ex. A at p.7 (emphasis added).

4

Case 3:24-cv-00813     Document 1     Filed 07/03/24     Page 4 of 13 PageID #: 4

15. Section 23 of the Subcontractor Agreement states that "[t]he enforceability and interpretation of this Agreement shall be determined in accordance with the laws of the State of Tennessee." Ex. A at p. 11.

16. The inappropriate client contact and non-solicitation terms are reasonable and necessary under the circumstances of the relationship between Allied, as successor in interest to G4S, and Archangel.

17. In 2019, following the expiration of the Original CPA 443320, G4S entered a renewed contract with Metro for the same services it had been providing, dated effective January 9, 2019, which remains in full force and effect ("Renewed CPA 443320"). A true and correct copy of the Renewed CPA 443320 is attached hereto as **Exhibit "C."**

18. To establish Archangel as subcontractor in connection with Renewed CPA 443320, an Amendment to Subcontractor Agreement was executed by G4S and Archangel, effective January 9, 2019. *See* Ex. A, at pp. 14-15. The Amendment to Subcontractor Agreement remains in full force and effect and expressly states that "[e]xcept as modified in this Amendment, all other terms and conditions of the Subcontract remain unchanged." *Id.* To be clear, the Amendment to Subcontractor Agreement left Sections 3, 11, 12, and 23 of the Subcontractor Agreement (quoted above) fully intact.

19. In 2021, Allied acquired G4S. As part of the acquisition, G4S assigned Renewed CPA 443320, the Subcontractor Agreement, and the Amendment to Subcontractor Agreement to Allied. Allied therefore assumed all rights and responsibilities previously held by G4S in connection with these contracts—all of which remain in full force and effect.

20. After the acquisition, Archangel's position as Allied's subcontractor afforded it numerous opportunities to cultivate its competencies as a security provider. Allied and Archangel

met regularly with Metro to discuss a variety of service details that are important to Metro. In its capacity as Allied's subcontractor, Archangel was in a position to learn the service issues that are important to Metro and how Allied deploys service strategies that are responsive to those issues in the management of its client relationship with Metro. The knowledge gained by Archangel in servicing Metro is also useful in developing Archangel's qualifications to service other large municipal and non-municipal prime contracts. Additionally, Archangel had access to proprietary wage and pricing information that is specific to the Metro account.

21. Archangel has also profited immensely from its partnership with Allied. Allied has paid Archangel a total amount of $7,889,914.00 for the period from the operational effective date of Allied's acquisition of G4S on October 8, 2021 through May 31, 2024.

22. The Renewed CPA 443320 is currently set to expire on August 31, 2024. The Renewed CPA 443320 was originally scheduled to expire in December 2023, but was extended through August 31, 2024.

23. The Subcontractor Agreement and Amendment to the Subcontractor Agreement remain in effect for the duration of Renewed CPA 443320, until terminated by either Allied or Archangel.

24. To date, neither Allied nor Archangel has terminated the Subcontractor Agreement or Amendment to Subcontractor Agreement. Accordingly, the Subcontractor Agreement and Amendment to the Subcontractor Agreement remain in full force and effect.

25. Because the Subcontractor Agreement and Amendment to the Subcontractor Agreement remain in effect, Archangel remains bound by the terms of the "inappropriate client contact" and non-solicitation terms.

6

### B. Metro Opens Bidding on RFQ 373412, and Archangel Breaches Its Non-Solicit Obligations in Submitting a Bid

26. On April 23, 2024, Metro released RFQ 373412, seeking bids from entities hoping to serve as Metro's new Prime Contractor for Security Officer Services. The bid period was to remain open until 2 PM CDT on May 29, 2024.

27. In preparing a bid in response to RFQ 373412, Allied reached out to Archangel to express its interest in continuing to utilize Archangel as a subcontractor for security services furnished to Metro. Specifically, on May 9, 2024, DelMar Laury ("Laury"), Allied's President of the Southeast Region, emailed Ken Thomas ("Thomas"), Archangel's CEO, to offer subcontractor terms on RFQ 373412. A true and correct copy of the email is attached as **Exhibit D.**

28. On May 13, 2024, Thomas responded, stating:

> We appreciate the opportunity, but unfortunately are not able to commit to sub with you exclusively on this contract. The subcontracting opportunities are appreciated, but unfortunately dont [sic] meet our needs. **We are continuing our push to submit as a prime on this contract.**

Ex. D (emphasis added).

29. Naturally, Allied was taken aback by Archangel's response—as the Subcontractor Agreement and Amendment to Subcontractor Agreement expressly prohibit Archangel from submitting such a bid of its own.

30. In an attempt to salvage the relationship between the Allied and Archangel (and prevent Archangel from breaching its contractual obligations to Allied), Thomas Keegans ("Keegans"), Allied's Regional Vice President, spoke with Thomas over the phone the next day on May 14, 2024. During the conversation, Thomas reiterated to Keegans that Archangel intended to submit a prime contractor bid on Metro's RFQ 373412, and that it would not be participating as a subcontractor in Allied's prime bid.

7

31. Given Archangel's overt expressions of intent to breach its contractual duties, Allied was left with no choice but to have its counsel send Archangel a strongly worded cease and desist letter, reminding Archangel of the terms contained within the Subcontractor Agreement and Amendment to Subcontractor Agreement. Allied's counsel did so on May 28, 2024. A true and correct copy of the May 28, 2024 cease and desist letter is attached hereto as **Exhibit E.**

32. The May 28, 2024 cease and desist letter demanded that Archangel refrain from submitting a prime contract bid for RFQ 373412 to avoid a breach of Archangel's contractual obligations to Allied, and it also demanded that Archangel withdraw its prime contract bid for RFQ 373412 in the event that Archangel had already submitted such a bid.

33. To date, Archangel has not provided any response to Allied's cease and desist letter.

34. On information and belief—based on Archangel's explicit representations to Allied—Archangel submitted a prime bid for Metro's RFQ 373412 prior to the May 29, 2024 (2 PM CDT) deadline.

35. Allied also submitted a prime bid on RFQ 373412 prior to the May 29, 2024 (2 PM CDT) deadline. Needless to say, Archangel was not listed as Allied's intended subcontractor.

36. It is clear that despite having been supported by Allied/its predecessor for over ten years, Archangel now seeks to deprive Allied of its bargained-for benefit by intentionally violating the two-year prohibition on "inappropriate client contact" and solicitation set forth in the Subcontractor Agreement and Amendment to Subcontractor Agreement.

37. Allied seeks the benefit owed to it under its Subcontractor Agreement and Amendment to Subcontractor Agreement with Archangel, and respectfully requests that this Court enjoin Archangel from violating its obligations to Allied. Allied also seeks monetary damages in excess of $75,000, and attorneys' costs and fees.

## Count I
## Breach of Contract

38. The foregoing paragraphs 1-37 are hereby incorporated by reference as if set forth herein in full.

39. The Subcontractor Agreement and Amendment to Subcontractor Agreement are valid and enforceable contracts binding Allied (as successor-in-interest to G4S) and Archangel that are governed by Tennessee law.

40. Archangel entered into the Subcontractor Agreement and Amendment to Subcontractor Agreement for good and valuable consideration, including, but not limited to, the amounts and forms of payment set forth in the Subcontractor Agreement and Amendment to Subcontractor Agreement. *See,* Ex. A attached hereto.

41. Allied has fulfilled its obligations under the Subcontractor Agreement and Amendment to Subcontractor Agreement.

42. To date, neither Allied nor Archangel has terminated the Subcontractor Agreement or Amendment to Subcontractor Agreement, meaning the non-solicitation and no "inappropriate client contact" term set forth in Section 11 of the Subcontractor Agreement and Amendment to Subcontractor Agreement remains in full force in effect.

43. Nevertheless, Archangel submitted a prime bid in response to Metro's RFQ 373412, in direct violation of Section 11 of the Subcontractor Agreement and Amendment to Subcontractor Agreement.

44. Indeed, Archangel's submission of a prime bid to Metro is an intentional and direct breach of the valid non-solicitation and no "inappropriate client contact" provisions included in Section 11 of the Subcontractor Agreement and Amendment to Subcontractor Agreement.

45. Allied will suffer irreparable damage resulting from Archangel's material and ongoing breach of the non-solicitation and no "inappropriate client contact" term contained within the Subcontractor Agreement and Amendment to Subcontractor Agreement, unless this Court permanently restrains Archangel from breaching its obligations to Allied.

**WHEREFORE**, Allied respectfully requests that this Court enter judgment in favor against Archangel on the foregoing cause of action, and order the following relief:

A. That Archangel be permanently enjoined and restrained from directly contacting and/or soliciting Metro until two years following the termination of the Subcontractor Agreement and Amendment to Subcontractor Agreement.

B. That Archangel be required to withdraw its prime bid in response to Metro's RFQ 373412.

C. That Archangel not be permitted to accept any award offered by Metro under RFQ 373412.

D. That Archangel be required to pay Allied for its attorneys' fees and costs as set forth in Section 12 of the Subcontractor Agreement and Amendment to Subcontractor Agreement.

E. That Allied be awarded actual, compensatory, consequential and punitive/exemplary damages, pre-judgment and post-judgment interest, which are more than $75,000.

F. That Allied be awarded reasonable attorneys' fees, costs, and expenses, pursuant to the Subcontractor Agreement and Amendment to Subcontractor Agreement any other statutory or common law or rule; and

G. That Allied be awarded such other and further necessary and proper relief as this court may deem just and proper.

Respectfully submitted,

Date: July 3, 2024

**BUTLER SNOW LLP**
/s/ Larry Cheng
Larry Cheng, Esquire (BPR #036707)
150 3rd Avenue South, Suite 1600
Nashville, TN 37201
Tel: 615-651-6727
Email: Larry.Cheng@butlersnow.com

**ROYER COOPER COHEN BRAUNFELD LLC**
Barry L. Cohen, Esquire*
101 West Elm St., Suite 400
Conshohocken, PA 19428
Tel: (484) 362-2620
Email: bcohen@rccblaw.com

**Pro Hac Vice application forthcoming*

*Attorneys for Plaintiff, Universal Protection Service, LLC d/b/a Allied Universal Security Services*

11

# **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been served via U.S. Mail on the following:

Archangel Protective Services, Inc.
c/o Registered Agent Charles Frazier
5258 Murfreesboro Rd, #B
La Vergne, TN 37086-2720

*s/ Larry Cheng*_____
LARRY CHENG

THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **Universal Protection Service, LLC d/b/a Allied Universal Security Services**<br><br>Plaintiff,<br><br>v.<br><br>**Archangel Protective Services Inc.**<br><br>Defendant. | Ca. No. _____<br><br>Jury Trial Demanded |

## **VERIFICATION**

I, Thomas Keegans, Regional Vice President, on behalf of Universal Protection Service, LLC, d/b/a/ Allied Universal Security Services, being duly sworn according to law, depose and say that I am authorized to make this verification on its behalf. Based on my knowledge, information and belief and the information provided to me, the averments contained in the Complaint are true and correct, and are made under oath. I understand that the statements therein are made subject to penalty of perjury.

Dated: July 3, 2024        By: _____
                                                              Thomas Keegans, Regional Vice President

1.